IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. IDELFONSO TAPIA-RODRIGUEZ, Defendant. | CASE NO. 8:17CR314 **FINDINGS AND RECOMMENDAITON** |

This matter is before the Court on Defendant Idelfonso Tapia-Rodgriguez's ("Defendant") Motion to Suppress Evidence (Filing No. 39) and Motion to Sever (Filing No. 41).

Defendant has been charged with conspiracy to distribute and possess methamphetamine, and possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1). (Filing No. 1.) Jose Rodolfo-Chaidez ("Rodolfo-Chaidez"), Enrique Serna ("Serna"), and Minerva Garcia ("Garcia") are also charged in the indictment.

An evidentiary hearing on Defendant's motions was held on February 8, 2018. A transcript was filed on February 15, 2018. (Filing No. 80.) The motions are now ripe for disposition. For the reasons set forth below, the undersigned will recommend that Defendant's motions be denied.

## FACTS

On June 13, 2017, at law enforcement's request, a cooperating witness ("CW") set up a drug transaction by calling her supplier in Mexico and arranging for the delivery of methamphetamine. Allegedly, later that day, Garcia delivered the methamphetamine to the CW. (Filing No. 62.) Officers did not arrest Garcia at that time. (Filing No. 42.)

On September 26, 2017, the CW set up another delivery through her Mexican supplier. ([Filing No. 62](#).) The supplier allegedly sent Rodolfo-Chaidez to deliver methamphetamine to the CW. On that date, Rodolfo-Chaidez was arrested for possession of methamphetamine with intent to deliver. (TR. 4-5.) Following the arrest, Rodolfo-Chaidez was taken to the Southeast Precinct. (TR. 5.) Rodolfo-Chaidez waived his *Miranda* rights and agreed to be interviewed by officers.[1] (TR. 6.) Rodolfo-Chaidez told officers that he had methamphetamine and money at his house and provided his address. (TR. 7.) Rodolfo-Chaidez also told the officers that his roommate, "Ponco," who was later identified as Defendant, was involved with drugs, but he did not know to what extent. (TR. 7.) Rodolfo-Chaidez told officers that Defendant had only been living with him for a short period of time. (TR. 7.) Rodolfo-Chaidez signed a consent to search form, which was written in Spanish, and provided law enforcement a key to the house. (TR. 9; Ex. 1.) Rodolfo-Chaidez told officers during questioning that he occupied the southwest bedroom of the house. (TR. 11.)

Officers transported Rodolfo-Chaidez to the house. Rodolfo-Chaidez accompanied officers as they entered the house using the key that he provided to them. (TR. 9, 18-19.) Officers anticipated that someone else would be at the residence, so Sgt. Heath entered the house first and issued loud commands in English and Spanish. (TR. 9, 24.) When officers entered the house, they found Defendant in the living room. (TR. 12.) Defendant was immediately placed in handcuffs. (TR. 12.) Officers then conducted a security sweep of the house, including the bedrooms. (TR. 12.) No evidence of contraband was visible in the bedrooms during the sweep, but contraband was observed in the kitchen. (TR. 13.)

Following the sweep, officers began to search the house, but did not immediately search the bedroom that they believed to belong to Defendant.[2] (TR. 14.) Sgt. Heath, communicating

---

[1] Rodolfo-Chaidez speaks Spanish. Therefore, the interview was conducted in Spanish by Omaha Police Sergeant Brian Heath ("Sgt. Heath"). (TR. 5.) Sgt. Heath is fluent in Spanish and an experienced translator. (TR. 6.) He testified that he has conducted several hundred interviews in Spanish. (TR. 6.) Sgt. Heath testified that Rodolfo-Chaidez did not express any difficulty understanding his questions. (TR. 8-9.)

[2] Ten to eleven officers were present during the entry and search of the house. All officers were armed and in tactical vests. (TR. 23.)

in Spanish, told Defendant why they were present and asked Defendant his name and if he lived there.[3]  (TR. 14, 29.)  Sgt. Heath also asked Defendant which bedroom belonged to him.  (TR. 11.)  Defendant told Sgt. Heath that he was staying in the northwest bedroom.  (TR. 15.)  Defendant gave officers consent to search the bedroom, and signed the same consent form that had previously been signed by Rodolfo-Chaidez.  (TR. 15; Ex. 1.)  Officers did not make any promises or threats to Defendant.  (TR. 35.)  Officers searched Defendant's bedroom and found several pounds of methamphetamine in a shoebox which was located inside the closet.  Officers also found money in the bedroom.  (TR. 16-17.)

After the drugs had been found in Defendant's bedroom, Defendant was brought into the bedroom and sat on the bed.  At that point, Sgt. Heath asked Defendant his name, where he was from, and how long he had been living in the house.  (TR. 17-18.)  Once Defendant answered these questions, he was advised of his *Miranda* rights for the first time.  His *Miranda* rights were communicated to him in Spanish.  (TR. 18.)  Defendant declined to speak further with officers and he was not asked additional questions.  (TR. 18.)

On or about October 2, 2017, Garcia allegedly contacted the supplier to arrange another delivery of methamphetamine and was arrested when she arrived at the agreed upon location.  (Filing No. 42.)  Upon a search of her residence, officers located Serna and considerable quantities of methamphetamine and cash.  (*Id*.)

## DISCUSSION

### 1. Motion to Suppress Evidence

Defendant contends that his Fifth Amendment rights were violated because he was not read his *Miranda* rights before being questioned in the house.  The evidence shows that this argument is without merit.

---

[3] Defendant speaks Spanish.  Therefore, Sgt. Heath spoke to Defendant in Spanish throughout this time.  (TR. 14.)  Sgt. Heath testified that Defendant did not express any problems understanding what Sgt. Heath was telling him.  (TR. 15-16.)

The Fifth Amendment requires that *Miranda* warnings be given when a person is interrogated by law enforcement after being taken into custody. *United States v. Huether*, 673 F.3d 789, 794 (8th Cir. 2012). Interrogation for purposes of *Miranda* occurs "when an officer's interaction with the suspect is likely to elicit an incriminating response." *United States v. Torres-Lona*, 491 F.3d 750, 758 (8th Cir. 2007) (quotation omitted). However, "a request for routine information necessary for basic identification purposes is not interrogation under *Miranda*, even if the information turns out to be incriminating." *United States v. McLaughlin*, 777 F.2d 388, 391 (8th Cir. 1985). "Only if the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged, will the questioning be subject to scrutiny." *Id.* at 391-92.

The evidence is clear that Defendant was not subject to custodial interrogation.[4] Although Sgt. Heath asked Defendant which bedroom belonged to him, this question did not amount to interrogation because it was not designed to elicit an incriminating response. *See United States v. Fleck*, 413 F.3d 883, 892-93 n.2 (8th Cir. 2005) (finding that an officer's request for a key to a bedroom during the search of a house did not constitute an interrogation because although "the officers asked a direct question of the [defendants] regarding the key to the bedroom, it was not the kind of investigative questioning-intended to elicit an incriminating response-that was at issue in *Miranda*"). It is apparent that the purpose of Sgt. Heath's question was not to elicit an incriminating response, but rather to obtain consent to search the northwest bedroom. In addition, officers had no knowledge of any drugs being in the northwest bedroom. Sgt. Heath also asked Defendant his name, where he was from, and how long he had been living in the house. However, these types of biographical questions do not trigger *Miranda*.

---

[4] The government does not dispute that Defendant was "in custody" for purposes of *Miranda* at the time he was questioned. (Filing No. 63 at CM/ECF p. 4.)

**2. Motion to Sever**

Rule 8(a) of the Federal Rules of Criminal Procedure permits the government to charge multiple counts in a single indictment if "the offenses are of the same or similar character, based on the same act or transaction, or are parts of a common scheme or plan." *United States v. Steele*, 550 F.3d 693, 702 (8th Cir. 2008). Rule 8(b) allows the government to charge two or more defendants in an indictment if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Rule 8 "is broadly construed in favor of joinder to promote the efficient administration of justice." *United States v. Taken Alive*, 513 F.3d 899, 902 (8th Cir. 2008). "Rarely, if ever, will it be improper for co-conspirators to be tried together." *United States v. Drew*, 894 F.2d 965, 968 (8th Cir. 1990).

Once it is determined that joinder is appropriate under Rule 8, Rule 14 of the Federal Rules of Criminal Procedure specifies that the district court may nevertheless order separate trials if a joint trial would "prejudice a defendant or the government." Fed. R. Crim. P. 14. Severance is required when the prejudice caused by a joint trial is severe or compelling. *United States v. Ruiz*, 412 F.3d 871, 886 (8th Cir. 2005). A defendant seeking severance must show that "real prejudice" would result from a joint trial. *United States v. Davis*, 534 F.3d 903, 916 (8th Cir. 2008). To make this showing, the defendant must establish that "(a) his defense is irreconcilable with that of his co-defendant or (b) the jury will be unable to compartmentalize the evidence as it relates to the separate defendants." *Id.* at 916-17 (quotation omitted).

Defendant argues that joinder of all defendants in a single indictment is improper under Rule 8. The undersigned disagrees. In this case, the defendants are charged as co-conspirators and the offenses are based on the same series of acts or transactions constituting an offense. Thus, joinder is proper.

Defendant also argues that he would be prejudiced by having a joint trial with Garcia and Serna due to "guilt by association." (Filing No. 42 at CM/ECF p. 5.) Defendant has not shown that his defense is irreconcilable with Garcia and Serna, nor has he demonstrated that the jury

will be unable to compartmentalize the evidence. Thus, he has failed to show joint trials would result in any real prejudice.

Defendant also contends that his case should be severed from Rodolfo-Chaidez because the introduction of Rodolfo-Chaidez's post-arrest statement that his roommate (Defendant) was involved in drugs would violate the Sixth Amendment's Confrontation Clause. In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that the admission in a joint trial of a non-testifying co-defendant's confession implicating the other defendant violated the Sixth Amendment. However, "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson v. March*, 481 U.S. 200, 211 (1987). Moreover, a *Bruton* violation does not occur if the statement admitted at trial "only inculpates a codefendant inferentially-through linkage to other evidence." *United States v. Coleman*, 349 F.3d 1077, 1085 (8th Cir. 2003). The undersigned finds that Rodolfo-Chaidez's statement does not implicate Defendant on its face. Redacting Rodolfo-Chaidez's post-arrest statement to eliminate any mention of his roommate's involvement in drug distribution would safeguard Defendant's constitutional rights.

Accordingly,

**IT IS HEREBY RECOMMENDED** to United States District Court Judge Robert Rossiter, Jr. that Defendant's motions be denied.

Dated March 16, 2018.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

## ADMONITION

A party may object to a magistrate judge's order by filing an objection within fourteen (14) days after being served with a copy of the findings and recommendation. Failure to timely object may constitute a waiver of any objection.