# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 8:17CR314 |
| v. | |
| IDELFONSO TAPIA-RODRIGUEZ, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on defendant Idelfonso Tapia-Rodriguez's ("Tapia-Rodriguez") Motion to Suppress Evidence (Filing No. 39) and Motion to Sever (Filing No. 41). The magistrate judge[1] issued a Findings and Recommendation (Filing No. 81) recommending the Court deny both motions. The magistrate judge concluded (1) Tapia-Rodriguez "was not subject to custodial interrogation," and (2) redacting codefendant Jose Rodolfo-Chaidez's ("Rodolfo-Chaidez") post-arrest statement to remove any reference to his roommate's drug distribution would sufficiently address the confrontation-clause issue raised in Tapia-Rodriguez's severance motion. *See Bruton v. United States*, 391 U.S. 123 (1968); *Richardson v. Marsh*, 481 U.S. 200 (1987). Tapia-Rodriguez objects (Filing No. 83) to the recommendation that his suppression motion be denied and to the scope of the recommended redaction. Tapia-Rodriguez's objections are sustained in part and overruled in part as discussed below.

## I. BACKGROUND

On September 26, 2017, a cooperating witness arranged for a delivery of methamphetamine from her supplier in Mexico. When Rodolfo-Chaidez arrived with the drugs, Omaha Police Department Sergeant Brian Heath ("Sergeant Heath"), a twenty-three-year veteran of the force, arrested him for possession of methamphetamine with

---

[1] The Honorable Susan M. Bazis, United States Magistrate Judge for the District of Nebraska.

intent to deliver and took him to the police station for questioning. After waiving his rights and agreeing to answer questions, *see Miranda v. Arizona*, 384 U.S. 436, 479 (1966), Rodolfo-Chaidez told Sergeant Heath and another officer his home address, that he had more drugs and money there, and that his roommate (later identified as Tapia-Rodriguez) was somehow involved in the drug trade. Rodolfo-Chaidez also told the officers that his bedroom was in the southwest corner of the two-bedroom house.

Sergeant Heath obtained Rodolfo-Chaidez's written consent to search his residence, including his bedroom. Then, Sergeant Heath and nine or ten other officers went to Rodolfo-Chaidez's house to perform a search. With a key from Rodolfo-Chaidez, who was there in handcuffs, Sergeant Heath opened the door. He and the other officers quickly entered the house with weapons drawn, loudly announcing their presence. Upon entering the house, the officers encountered Tapia-Rodriguez on the couch in the living room watching television. They immediately put him in handcuffs and performed a protective sweep of the house. Although officers observed some methamphetamine in the kitchen, they did not see any visible contraband in either bedroom during the sweep.

As some of the officers began to search the house, Sergeant Heath and another officer spoke with Tapia-Rodriguez without giving any *Miranda* warnings. They told him why they were there and asked his name, whether he lived in the house, and which bedroom was his. Sergeant Heath testified Rodolfo-Chaidez's statements about his roommate alerted Sergeant Heath that officers would not be able to search one of the rooms without speaking to the occupant of that room. According to Sergeant Heath, he asked Tapia-Rodriguez which bedroom was his so the officers could obtain permission to search it. On cross-examination, Sergeant Heath, an experienced narcotics officer, acknowledged the evidentiary importance of associating a suspect in a drug case with a particular residence or bedroom where contraband is found.

When asked, Tapia-Rodriguez indicated the northwest bedroom was his and gave officers written permission to search it, signing the same consent form Rodolfo-Chaidez signed. An officer soon discovered several pounds of suspected methamphetamine in a shoebox in Tapia-Rodriguez's closet. The officers then brought Tapia-Rodriguez—still handcuffed—to the bedroom to interview him as he sat on the bed. Sergeant Heath again asked Tapia-Rodriguez his name, where he was from, and how long he had been living at the house. After Tapia-Rodriguez answered, Sergeant Heath gave him *Miranda* warnings. Tapia-Rodriguez declined to speak with the officers further and the questions stopped. Tapia-Rodriguez was arrested and charged with conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846, and possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1).

On November 14, 2017, Tapia-Rodriguez moved to dismiss "all evidence derived from" his custodial statements to the police.[2] As relevant here, Tapia-Rodriguez also "move[d] that his trial . . . be severed from that of Defendant Rodolfo-Chaidez on <u>Bruton</u> grounds." The magistrate concluded neither motion had merit, deciding Tapia-Rodriguez "was not subject to custodial interrogation" and finding any *Bruton* issue could be remedied by "[r]edacting Rodolfo-Chaidez's post-arrest statement to eliminate any mention of his roommate's involvement in drug distribution." Tapia-Rodriguez objects to those conclusions.

## II. DISCUSSION

### A. Standards of Review

Under 28 U.S.C. § 636(b)(1), the Court may designate a magistrate judge to conduct an evidentiary hearing and submit "proposed findings of fact and

---

[2]The government concedes Tapia-Rodriguez was in custody when he made the pertinent statements to the police. Tapia-Rodriguez does not argue his statements were involuntary. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *United States v. Hardison*, 859 F.3d 585, 591 (8th Cir. 2017).

recommendations for the disposition" of a motion to suppress. The Court then must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3).

Section 636(b)(1)(A) authorizes the district court to "designate a magistrate judge to hear and determine" a pretrial motion to sever. The Court may reconsider such a matter "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.*; *see also Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007).

**B.  Suppression**
   **1.  Physical Evidence**

In his Motion to Suppress, Tapia-Rodriguez broadly moves to suppress "all evidence derived from" and "obtained as a result of custodial interrogations by Omaha police officers on or about September 26, 2017." In his brief and objections, Tapia-Rodriguez more narrowly requests that the Court suppress his statements to police "as to his residence at the home and the duration and details thereof."

To the extent Tapia-Rodriguez seeks to suppress the physical evidence derived from his statements, the Motion is denied. Even if Tapia-Rodriguez were able to show a *Miranda* violation, "suppression of the resulting physical evidence is not the appropriate remedy." *United States v. Beasley*, 688 F.3d 523, 531 (8th Cir. 2012) (citing *United States v. Patane*, 542 U.S. 630, 633-34, (2004) (plurality opinion) (concluding that failing to give a suspect *Miranda* warnings does not require "suppression of the physical fruits of the suspect's unwarned but voluntary statements"); *id.* at 644-45 (Kennedy, J., concurring)); *accord United States v. Fleck*, 413 F.3d 883, 893 (8th Cir. 2005) ("In this circuit, we have refused to extend the fruit-of-the-poisonous-tree doctrine to exclude

4

physical evidence derived from a voluntary statement made in the wake of a *Miranda* violation.").

The Court now turns to Tapia-Rodriguez's custodial statements.

### 2. Custodial Statements

The Fifth Amendment to the United States Constitution provides a privilege against self-incrimination. *Miranda*, 384 U.S. at 478-79. That privilege prevents a suspect "from being compelled to testify against himself" or to otherwise provide "evidence of a testimonial or communicative nature." *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990) (quoting *Schmerber v. California*, 384 U.S. 757, 761 (1966)). To be testimonial, a suspect's "communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Id.* (quoting *Doe v. United States*, 487 U.S. 201, 210 (1988)).

To protect that privilege, *Miranda* requires that before interrogating a suspect in custody, police officers must inform him of his rights to remain silent and to retained or appointed counsel and warn him that any statement he makes may be used against him. *Id.* For purposes of *Miranda*, interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (footnotes omitted).

Officers need not, however, give *Miranda* warnings before asking questions that are "reasonably related to the police's administrative concerns," including questions about the suspect's "name, address, height, weight, eye color, date of birth, and current age." *Muniz*, 496 U.S. at 601. "[A] request for routine information necessary for basic identification purposes is not interrogation under *Miranda*, even if the information turns out to be incriminating." *United States v. McLaughlin*, 777 F.2d 388, 391 (8th Cir.

5

1985).  However, if the officer "should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged," the question remains "subject to scrutiny."  *Id.* at 391-92.

Officers also do not need to give *Miranda* warnings before requesting a suspect's consent to perform a search, even when the suspect is in custody.  *See*, *e.g.*, *United States v. Saenz*, 474 F.3d 1132, 1137 (8th Cir. 2007).  In that situation, *Miranda* warnings are unneeded because "a consent to search is not an incriminating statement."  *Cody v. Solem*, 755 F.2d 1323, 1330 (8th Cir. 1985) ("While the search taken pursuant to that consent disclosed incriminating evidence, this evidence is real and physical, not testimonial."); *accord United States v. Bustamante*, 493 F.3d 879, 892 (7th Cir. 2007) ("[A] request to search a vehicle or home is not likely to elicit an incriminating response and is therefore not interrogation."); *United States v. Stevens*, 487 F.3d 232, 242 (5th Cir. 2007) ("A statement granting 'consent to a search . . . is neither testimonial nor communicative in the Fifth Amendment sense.'" (quoting Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, Criminal Procedure § 3.10 (4th ed. 2004))).  That can be true even if the suspect gives information about where he lives when officers expect to find contraband there.  *See*, *e.g.*, *United States v. Knope*, 655 F.3d 647, 654 (7th Cir. 2011).

In this case, the magistrate judge recommends the Court deny Tapia-Rodriguez's Motion to Suppress because he "was not subject to custodial interrogation."  Relying on *Fleck*, 413 F.3d at 892-93 n.2, the magistrate judge decided Sergeant Heath's question regarding Tapia-Rodriguez's bedroom "did not amount to interrogation because it was not designed to elicit an incriminating response."  The magistrate judge found the purpose of Sergeant Heath's question was "to obtain consent to search the northwest bedroom."  With respect to questions about Tapia-Rodriguez's name and how long he had been living in the house, the magistrate judge concluded those "types of biographical questions do not trigger *Miranda*."

Tapia-Rodriguez objects to the magistrate judge's analysis and her ultimate conclusions. According to Tapia-Rodriguez, "[t]he Magistrate Judge erroneously applied a subjective test to Sgt [sic] Heath's custodial interrogation about which bedroom belonged to [Tapia-Rodriguez] and under the correct objective test, [his] statements should be suppressed." Tapia-Rodriguez further faults the magistrate judge for deciding questions "about his residence at the house [were] merely 'biographical' and not subject to Miranda."

Tapia-Rodriguez's objection to what he sees as the magistrate judge's application of a subjective test is easily addressed on de novo review. Though it is not entirely clear the magistrate judge applied such a test, the Court agrees with Tapia-Rodriguez that the proper standard for determining whether a question is "reasonably likely to elicit an incriminating response from the suspect" is an objective one that "focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis*, 446 U.S. at 301. Of course, officer intent is not entirely irrelevant. *Id.* Even when addressing administrative concerns like identification and booking, an officer cannot ask questions designed to elicit an incriminating response. *Id.*; *Muniz*, 496 U.S. at 602 n.14.

Applying this objective standard, the Court concludes that under the circumstances of this case, routine questions about Tapia-Rodriguez's name, identification, and general residence do not constitute interrogation under *Miranda* and need not be suppressed, even if some of his answers "turn[] out to be incriminating" in some way. *McLaughlin*, 777 F.2d at 391. Sergeant Heath's question about which bedroom was Tapia-Rodriguez's presents a tougher issue.

In one sense, the question was integral to the officers' requests for consent to search, which the Eighth Circuit has repeatedly held does not require *Miranda* warnings. *See*, *e.g.*, *Cody*, 755 F.2d at 1330. The officers had already received consent to search the two-bedroom house, including the southwest bedroom, from one tenant. *See Fernandez*

*v. California*, 571 U.S. ___, ___, 134 S. Ct. 1126, 1132 (2014) (footnote omitted) ("[P]olice officers may search jointly occupied premises if one of the occupants consents."); *United States v. James*, 353 F.3d 606, 613 (8th Cir. 2003) ("Consent to search . . . may be given either by the suspect or by some other person who has common authority over, or sufficient relationship to, the [area or] item to be searched."). The officers had also been told that someone else lived in the house and encountered Tapia-Rodriguez on the couch watching television when they entered.

To fairly and effectively act on Rodolfo-Chaidez's consent to search and gauge its limits and to ask his cotenant, if present, for consent to search, the officers had to have some basic information about who lived in the house and had authority to consent (or object) to a search of any common areas and the other bedroom. *See Georgia v. Randolph*, 547 U.S. 103, 106 (2006) (holding that a physically present cotenant's express refusal to permit a search of a common area prevails as to him over "the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the [common] area"). In that sense, all of Sergeant Heath's residency questions, including the one about the northwest bedroom, were "reasonably related" to the officer's administrative purpose of obtaining and effecting consent to search. *Muniz*, 496 U.S. at 601; *cf. United States v. Gaston*, 357 F.3d 77, 82 (D.C. Cir. 2004) (excepting from *Miranda* an officer's routine questions about a defendant's "address and ownership interest in the house" to be searched under a search warrant because the questions "reasonably related" to the officer's "administrative concerns" of ensuring the police complied with Federal Rule of Criminal Procedure 41's requirement of providing a copy of the warrant and a receipt to the owner of the property).

On the other hand, some courts have found that custodial questioning about the ownership or control over property can, under certain circumstances, constitute interrogation for purposes of *Miranda*. *See, e.g., United States v. Smith*, 3 F.3d 1088, 1098 (7th Cir. 1993) ("Where the question goes beyond a request for consent and

8

inquires as to ownership of that which is searched, the inquiry crosses the threshold into testimonial incrimination and is therefore barred unless the safeguards of *Miranda* have been put in place."); *United States v. Peterson*, 506 F. Supp. 2d 21, 22, 25 (D.D.C. 2007) (concluding an officer's questions about the ownership of an apartment "f[e]ll within the exception from *Miranda* for questions reasonably related to administrative concerns," but that asking the defendant "what bedroom was his" without first giving *Miranda* warnings warranted suppressing his answer). In *United States v. Henley*, 984 F.2d 1040, 1043 (9th Cir. 1993), for example, the Ninth Circuit suppressed a defendant's admission that he owned a vehicle involved in a bank robbery because "[a]n officer investigating a bank robbery who has the getaway car but isn't sure who owns it should well know that asking a suspect if he's the owner of the vehicle is reasonably likely to elicit an incriminating answer." The court specifically acknowledged the prudence and importance of the officer's stated reason for asking the question—to establish ownership or authority before conducting a consent search—but nonetheless held "statements of ownership may not be admitted into evidence where police should have known that the response was likely to incriminate the defendant, unless, of course, *Miranda* warnings were first given." *Id.* at 1043-44.

Drawing on that line of authority, Tapia-Rodriguez credibly argues Sergeant Heath's question about his bedroom elicited additional information about Tapia-Rodriguez's authority and control over the bedroom (and any contraband that might be found there)—information that is, as Sergeant Heath well knew, often material evidence in a drug case like this. *See*, *e.g.*, *United States v. Pacheco-Lopez*, 531 F.3d 420, 424 (6th Cir. 2008) (concluding that questions about where a suspect was from how he arrived at a suspected drug house and when he arrived were not just biographical but were "questions 'reasonably likely to elicit an incriminating response,' thus mandating a *Miranda* warning"). According to Tapia-Rodriguez, his unwarned statement about his bedroom must be suppressed because Sergeant Heath's questions were "directly relevant to the substantive offense charged" and elicited an incriminating response.

9

Although the Eighth Circuit has made clear that asking for consent to search specific property does not require *Miranda* warnings, it has not yet clearly spoken on the ownership and control issue in this case. *See Beasley*, 688 F.3d at 531. The government and magistrate judge aptly note some similarities between the circumstances in this case and those in *Fleck*.

In *Fleck*, police officers were investigating a report that some stolen property was located in a house co-owned by brothers Robert and Ken Fleck and their sister. *Fleck*, 413 F.3d at 888. Without providing *Miranda* warnings, the officers asked for consent to the search the house to further their investigation. *Id.* Ken volunteered consent and signed a consent form. *Id.* During the search, the officers encountered a padlocked bedroom. *Id.* When the officers "asked whose bedroom it was," Robert answered both of them and Ken agreed. *Id.* at 888-89. Robert provided the key to the lock and officers searched the bedroom, finding boxes of stolen property and several guns. *Id.* at 889.

Before trial on gun charges, Robert unsuccessfully sought to suppress the non-Mirandized statements made before the guns were found and the physical evidence obtained during the search. *Id.* at 891-92. The Eighth Circuit affirmed the denial of Robert's motion to suppress, stating "we cannot say that asking for the key to the bedroom constituted interrogation." *Id.* at 892. The Eighth Circuit explained,

> Though the officers asked a direct question of the brothers regarding the key to the bedroom, it was not the kind of investigative questioning-intended to elicit an incriminating response-that was at issue in *Miranda*. Nothing further regarding authority over the bedroom-and hence ownership of or authority over the guns found in it-was admitted by Robert in producing the key since the brothers had already told the officers they were co-owners of the entire house.

*Id.* at 893 n.2 (internal citation omitted).

While not directly on point, the analysis in *Fleck* indicates straightforward requests for consent to search and related questions about authority and control over a

10

particular bedroom do not constitute interrogation. *Id.* At the time the officers asked for consent to search the Fleck house, they already suspected that the house contained stolen property. Yet the Eighth Circuit concluded the officers' request for consent to search the house in general and more specific questions about control over the padlocked room in particular were not the kind of investigative questions that were reasonably likely to elicit incriminating responses from the Fleck brothers. *Id.* at 892 & n.2 (citing *Innis*, 446 U.S. at 301). In other words, the questions did not constitute interrogation. *Id.* at 892.

The facts in this case differ some, but Sergeant Heath's questions about Tapia-Rodriguez's residency and occupancy of the northwest bedroom did not—under the circumstances—seek any more information than the questions in *Fleck*. Sergeant Heath only asked questions that were reasonably related to obtaining consent to search. He did not ask any questions about what the officers might find or other details in the case. As the magistrate judge noted, when Sergeant Heath sought Tapia-Rodriguez's consent to search, the officers did not have any evidence of drugs or any other specific knowledge of criminal activity connected to the bedroom.

This case presents a close call. On balance, the Court concludes that under *Muniz* and *Fleck* and the circumstances of this case, Sergeant Heath's routine questions about Tapia-Rodriguez's residency and which bedroom was his do not constitute interrogation. As such, Sergeant Heath could ask those questions without first giving *Miranda* warnings. Tapia-Rodriguez's Motion to Suppress Evidence is denied.

### C. Severance

Tapia-Rodriguez also moves the Court to sever his case from that of Rodolfo-Chaidez, arguing the introduction at a joint trial of Rodolfo-Chaidez's post-arrest statements about drug activity will deny "Tapia-Rodriguez his rights under the Sixth Amendment to the United States Constitution as to cross examination and confrontation." *See Bruton*, 391 U.S. at 126 (holding the admission of a nontestifying codefendant's incriminating extrajudicial statements at a joint trial violated the petitioner's

constitutional rights, notwithstanding a limiting instruction). The magistrate judge acknowledged the *Bruton* issue in this case but determined Tapia-Rodriguez's rights could be protected by redacting Rodolfo-Chaidez's statement and giving a limiting instruction. *See Richardson*, 481 U.S. at 211 (holding "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."). In light of *Richardson*, the magistrate judge concluded "[r]edacting Rodolfo-Chaidez's post-arrest statement to eliminate any mention of his roommate's involvement in drug distribution would safeguard [Tapia-Rodriguez's] constitutional rights."

Tapia-Rodriguez agrees that the *Bruton* issue in this case "can be remedied with a proper limiting instruction and appropriate redaction." Tapia-Rodriguez only objects that the magistrate judge's proposed remedy does not go far enough. He contends the proper remedy under *Richardson* "is to eliminate any reference to the roommate's existence." The government, which states it "adopts" the magistrate judge's conclusions and recommendations, does not object to Tapia-Rodriguez's cogent argument for refining the magistrate judge's recommended remedy.

Based on the foregoing, the Court will sustain Tapia-Rodriguez's objection on this point. If Rodolfo-Chaidez does not testify at trial, his post-arrest statement to police must be redacted to eliminate any reference to his roommate's existence as well as his roommate's alleged involvement in drug distribution. In that event, the parties should be prepared to provide the Court with a proposal for an appropriate limiting instruction.

    IT IS THEREFORE ORDERED:
1. Defendant Idelfonso Tapia-Rodriguez's objections (Filing No. 83) to the magistrate judge's Findings and Recommendation are sustained in part and overruled in part as discussed above.
2. The magistrate judge's Findings and Recommendation (Filing No. 81) are accepted as modified by this Memorandum and Order.

3.  Tapia-Rodriguez's Motion to Suppress Evidence (Filing No. 39) is denied.

4.  Tapia-Rodriguez's Motion to Sever (Filing No. 41) is denied. However, Rodolfo-Chaidez's post-arrest statement must be redacted to remove any references to a roommate.

Dated this 11th day of April, 2018.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge